I think that the way it's framed on today's calendar of cases is probably the way I need to approach this case. I'd like to say it's a multiplicity or a double jeopardy case, but it also, underneath it, has a big mandate question. And I think that that's one of the things the court's going to have to resolve according to how it approaches the two issues the way I divided them up. And we believe that the court erred in construing the mandate too narrowly. And on top of that, I would suggest that Ventura and its discussion of mandate sentencing package doctrine actually slightly modifies Suse and the case in the Pledge of Reliance, which is Bell. Well, let me cut through that a little bit and correct me if I do so improperly. It seems to me your fundamental argument for us getting into this judgment, which is a 25-year-old judgment, 1998, is that two counts relied on the possession of a gun. One was a Ruger .22, and the other was a Target .22. That's the way they're labeled. And the argument is made now that that's one and the same gun, and therefore the possession was a single possession, and he should not have been sentenced for two violations. And it's on the merits exactly what I'm arguing. And you have to, in order to go through all these other arguments you have, that's really where we stand. And so that raises my question, is those facts were alleged in the indictment originally, and they were addressed all the way through. Why, 25 years ago, didn't your mans say that's the same gun, or some attorneys say that's the same gun, if it's in fact so? I don't know if it's so. Yes, sir, Judge. And for what it's worth, I think I've been a lawyer for 10 weeks when Mr. Manning was originally arrested. But, Judge, the indictment's actually silent as to the guns. So the indictment says gun and gun. Was it the pre-sentence report? Yes, sir. And if I may, there were three different discussions, and we believe they're consistent. And we actually cite those. We believe that in Ruger, which is discussed in, I believe it's paragraph 16, and they change as it goes through because there's three pre-sentence reports. There's a discussion about a Ruger, and then there's a discussion about Mr. Manning's sister, who says he always carries a gun and has a really long barrel. And there's two parts to that, that he always carries it and then has a long barrel. And then there's a reference to it being Target, with Target being capitalized. And I put in my with a long barrel, suggest it's a Target pistol, which is all one pistol. Your argument assumes that the word Target is not a brand, but it's an adjective. That's correct, Your Honor. But it has a capital T. It does. And the district court found some time back that there were two separate guns. Judge, I disagree with Your Honor on that. Now, in the first pre-sentence report, paragraph 37, it discusses the fact that the same gun was used for count four as in the crimes comprising counts one, two, and three. And in fact, granted a specific offense characteristic. That's the pre-sentence report. What about at the November 2016 sentencing hearing when the district court said we had two guns that were felon in possession counts. So we not only had the weapon that was used to commit the offense, we had a second weapon that was on his person or found at the time of his arrest. They were not the same weapon. They were two different weapons that were involved here. What about that? That clearly contradicts paragraph 37 of the 1998 report. That's the district court saying that. Same judge. Right. Can I ask a question? Oh, I'm sorry. Did appellant object or correct the judge at that point when the district court said that? Well, Judge, there was no objection to multiplicity. I will agree with that. And I'll tell you, obviously, what I've got to own is this, that there were consecutive sentences imposed in 2016. And by the way, the Fourth Circuit's been clear for multiplicity to be erroneous and prejudicial. There has to be a consecutive sentence, which is why it wasn't forfeited at the 1997-1998 sentencing, because they were concurrent at the time. But in 2016, I'll concede that there was no objection. And that gets back to the mandate rule, because Ventura tells us in adopting the sentencing package doctrine, that when there's a reversal, a vacated sentence and remand for resentencing, and it quotes an 11th Circuit case, that the sentence is void in its entirety and the court is free to revisit any prior rulings. And there's a facet of the sentencing package doctrine and stacking that makes this mandate applicable back in 2021. And that's the fact that stacking and termination of total punishment is made after guidelines calculations, after 35 feet. Yeah, but that focuses on the sentencing package. All that focuses on the sentence. And here, we have two convictions, which one under Bell would have to be set aside, if you're right. And the two convictions have stayed since 1998. And nobody has raised that up until now. And the mandate didn't have us go into the convictions. And we're not moving to have the conviction itself. I know you're trying to distance yourself from the convictions, but if there's duplicity, then you have to vacate the sentence. I mean, the conviction. As far as multiplicity, Judge, if I may, and because these are one crime charge to two, so it's multiplicity instead of two crime charges. Two counts. Yes, sir. Based on the same conduct. That's the argument. Yes, sir. Multiplicity. Two counts based on the same conduct involving the same firearm. And the remedy is to vacate one, one of the counts under double jeopardy or duplicity or whatever your argument is. And we didn't open up the convictions. No, sir, you didn't. But we believe the merging, because remember, the error doesn't occur. There's not prejudicial errors. It's four circuit law. There's a prejudicial error. Well, the error was committed back in 1998 and nobody raised it. That's the biggest problem. Well, Judge, if I may, back to the indictment. Rule 12, and they've cited Rule 12, discusses the fact that a challenge such as multiplicity has to be brought before the case goes to trial. There's two trials. I've never found any incidents where there's multiple punishments arising from one crime that occurred in two trials in the United States ever. I can't find one case under this posture. And it raises the question, with the pistol not identified in the indictment, which is part of Rule 12, how would the record not require a trial to bring it up? How would the defendant not know? He's the actor. He tells his attorney. Well, how does the attorney not know? It's presented in the pre-sentence report. They introduced the guns into evidence, right? In the trial. Yeah. But the defendant maintains his innocence, Judge. So he wouldn't know what guns were used in a crime he didn't do. And we're still with that. He's never admitted his wrongdoing. And in fact, during one of his allocutions, he talks about making a statement. The judge says, it could be, if it can't be used against me, he said, don't do that. But the jury ruled against him. In two different trials. So the first trial would have been a mis-multiplicity. The second trial, soon the evidence showed that there were the same gun, and I'm handicapped by lack of those documents. I could not get my hands on any of the original trial documents from two trials. But there's concurrent sentences. So the Fourth Circuit would not have recognized that error back then. There were concurrent sentences. You're arguing it's an error. It's not altogether clear. A district court said there were two weapons. And the description has two different weapons. And you argue that the capital T, Target, is actually an adjective, meaning a Target 22, which was the Ruger. Yes, sir. But Judge, paragraph 37, the judge makes, and for what it's worth, if you'll go back, there were a lot of objections to the 1997 precedence report. Nonetheless, paragraph 37 was unobjected to by either side. And just like forfeiture, which is what we're talking about here, could apply for Mr. Manning, forfeiture would apply to the government's argument about it being a different gun. Paragraph 37, the original precedence report, clearly indicates that there's other adjustment count forth guidelines because it's the same gun, the same firearm, which uses counts one, two, and three. That's the law of the case. From that day on, despite the court's, and I'm going to call it dicta, it's not an appellate court, the court's pontification without any evidence at the 2016 hearing that there were two or three guns used, because remember there's only two gun counts. Let me understand this. So in 2021, Mr. Manning makes this argument before the district court and I understand the sentencing package, but I also understand the language says that the judge, the sentencing package doctrine says that the judge should be free to review. She, at that point, denied his motion to review it, maybe because in 2016 she had already, you know, I don't know if she ruled on it, but she did discuss it and say that there were two guns and that there were two, that there were two incidents on the, there was two guns and two different days, two different time periods when the gun was found on him or used. So I'm not even sure if we have, I mean, it says the judge is free to, it doesn't say she shall or she must, it says she's free to review it. I agree. She said no. I understand. So explain to me how, I'm not sure how we even hear, I mean, how we have jurisdiction to hear any of this, even to get to the merits. Okay. And with the time I've got, the mandate rule puts you back to the part where it's been reopened. And we know that because in Sousey, he was, there was a violation of 3553. He went back and wanted to go through the guidelines. And the court in Sousey, this court says, we can't go back to the guidelines. Those were done. We only opened it up to the 3553 factors. Here's arguably undoing count two, would send it back for purposes of the sentencing package. Now, even if that precludes the sentencing guidelines review. What was the language we used? We vacated 924C, right? That's correct, Your Honor. And vacating one of the counts, we sent it back. What did we say? You quote, remained it for re-sentencing consistent with this opinion. Okay. So we knocked out one count and so the court gets to re-sentence. That's correct. And that requires determining a total punishment. Total punishment's done before stacking. And it's the stacking that's there. You cannot stack the same crime, whether it's been the result of two different multiplicitous convictions, because that violates double jeopardy law, which this court has found is plain error recognizable as well. And so what happens when it was remanded back in the 2021 sentencing, it at least had to go back. Even if it is, the guidelines are done. Well, why would the court reopen stacking when it already found there were two different guns? Well, that's interesting. Ventura itself, what the government wants in Maney's case is what Mr. Ventura wanted. In Mr. Ventura's case, y'all vacated, I believe it was count seven of his. And he said, no, no, you just take that count out and reimpose the rest of the sentence. And this court said, no. And Ventura, it's a sentencing package doctrine. And she gets to effectuate her intent, the court in Ventura, by going back and determining at a minimum, because that's what Ventura complained about. And for what it's worth, Ventura had another count, I believe it's like count eight, but that made up the difference for the reduction in sentence from count seven. That's exactly what the government wants here. Mr. Ventura lost. See, the difficulty I have though is the court, let's say the court opens the whole sentencing and looks at it. It's not, it was not authorized to open the convictions. That's correct. And so the convictions stand no matter what. Yes, sir. And so there are two considered at sentencing and said, I don't need to review that part of it. I've got the basic, I have to count for the 924C. Yes, sir. Now, what's the, aren't you asking for broader relief than the mandate would allow? I'm just asking for the sentence and with my time. No, no, please, please. I'm just asking that the sentences merge, which that's, that's one way of looking at it, not be allowed on those two counts. The convictions would stay. There would be scoring the program. Well, and they'd still be, the only reason you wouldn't stack them is because your argument they're duplicitous and duplicitous means that the convictions are improper. Well, judge, we believe the case law is pretty clear that you can have, and this is looking at double jeopardy law. You can have double jeopardy concerns about double prosecutions and separate is the theory that Lane talks about. You can't be punished twice for the same crime. And judge, I'm out of time. Okay. You've got some. Yes, sir. I do. I just had, so of course that gets you into the merits, but this whole continuous or interruption, I mean, he, they, I believe the police stopped him two hours after, in 1997, after the robbery attempt and he didn't have a weapon. And then later he shows up to the police station and says, I heard y'all looking for me. That's correct. And he didn't have, presumably without any weapons. And then on January 24th, he is stopped again. That's about what, 10 days later. And that's when the handgun is found in his back pocket. And so I guess even in looking at the merits of, if we were to get to the merits, how is that not this interruption? I mean, because he said from the time that they first interaction with the police is the first one, the woman, he shows up at the police station. And then the third one, how is that not an interruption? Because it's not an interruption of constructive possession. Just like I have TVs that I carry home from Walmart, it's sitting in my bedroom. I still possess it. I actually possessed it when I left Walmart and my possession has not changed. And if I go back and take it off the wall right now and put it back in my car, I'm actually possessing it. I constructively possessed it. It's, and again, there's a finding it's the same gun. So your honor has changed the question to whether or not it is continuous possession. And judge, we would believe, we would argue that there's no evidence otherwise that he was in constructive possession of the gun because he had dominion control and intent to exercise control over it. Thank you. Thank you. Thank you. Yes. And rebuttal. Mr. Andrews. Thank you, your honor. May it please the court. How are you going to straighten all this out? I'll do my best. And I will start by addressing the mandate rule. So Mr. Manning's arguments in this appeal were not raised in his 2016 2255 petition. They were not raised in his 2016 sentencing and they were not pressed in the direct appeal from that sentencing from which the remand that brings us here today arose in the course of making these arguments. He has not argued that there's been any dramatic change in the authority that governs his claims. He's not argued that there's any newly discovered evidence. He's not argued that there's any blatant error in the proceedings. And so under Bell, Soucy, and Pelegi, he is barred by the mandate rule from raising those for the first time in 25 years in a remand on a resentencing. As your honor has correctly pointed out, these are collateral attacks on a convention, or rather, on a... Let me play devil's advocate just for a little bit. We vacated the judgment because of the 924C. Sent it back for resentencing. At that point, the district court is free to explore the whole sentence, right? Free to. The district court must always assure itself that the guidelines are calculated. Yeah, but when you resentence, the court can take into account anything that's appropriate for sentencing. It has to do so within the mandate. The mandate opened up the sentence. Well, it vacated the sentence, but not necessarily the mandate. And in fact, in Soucy and Pelegi, the court also vacated the entire sentence and remanded back with instruction. So in other words, the procedural posture on remand in those cases was the same as it is here. And Soucy talks about this at length because in that case, the defendant had raised a defense based on the Supreme Court's opinion in Pepper. And what Soucy did is it analyzed Pepper and it said, okay, look, there is some flexibility that the district... Well, I thought Pepper, correct me if I'm wrong, but I thought Pepper stated that when a court is, when there is a resentencing, it's de novo and the court can look at anything, take in any evidence and any consideration that it otherwise would have done on a sentencing. That's true. But as Soucy said, Pepper did not change the fundamental rule of waiver and law of the case, which the mandate... Well, that's another argument. That's when he came back on remand, obviously the 924C was vacated. The convictions at that point had already been stacked in the prior 2016 sentencing. There was nothing in 2016 that prohibited Mr. Manning from making the argument then that he's made now. And so our argument would be, if you look at Soucy, because in that case, of course, the defendant did withdraw guidelines objections, did not press any guidelines objections on appeal. When the case went back on remand for reconsideration of the restitution order, the district court said, well, I don't think I can look at this again. And that doesn't mean that the guidelines won't be recalculated. It doesn't mean that there isn't some discretion for the district court in the words of Pepper to effectuate its sentencing intent. But what it absolutely cannot do is reconsider issues that litigated on appeal in the first instance. And of course, in the course of Mr. Manning's briefing, he cites Ventura, but he doesn't once recognize the part of the mandate rule that bars him in this case. And it's the very part of the mandate rule that Soucy and Pelleggi turned on, which is that the court is not going to hear on remand arguments that could have been made the first time, arguments that could have been raised to the fourth circuit on appeal the first time, but were not. As this court has pointed out... He brought up the issue, I think, earlier saying that this could be heard, the whole 922G issue on forfeiture. Instead of, he's saying that I think I believe his client in Wavy forfeited his right, and actually that this panel can consider a 922G issue on the forfeiture. I'm curious to hear what... Yeah, Your Honor, it would be a very unusual posture indeed. I mean, prior to raising this argument, Mr. Manning in two sentencings, in three prior appeals to this court, and in four 2255 successive petitions had never once raised this argument. If Mr. Manning wants to assert this argument, if he believes that there is in fact a dramatic change in the case law, if he believes in fact that there's newly discovered evidence, he can seek leave to file yet another successive 2255 attacking the convictions themselves and raising that argument as the procedural rules require him to do. Bringing it up on remand in this case, obviously it's our argument, it was barred by the mandate rule, but even beyond that, he has a host of impediments, procedural impediments that create a problem for him in raising it in the first instance in this posture. One final point I want to make, the defendant, or rather the appellant, has argued that the court should get into this question about 922G being a continuing offense, and there was some discussion and some questioning during the appellant's argument about these factual considerations of whether there's one gun or two guns. There is no district court record from which we can base a determination. If Mr. Manning were to clear all the procedural hurdles here, the district court still would have to make a finding of fact that's never formally been made, largely because Mr. Manning has never raised this issue before in which there was to determine whether there was in fact one gun or two guns before it could get to this question of whether count one and count four were in fact one continuing offense. All right, thank you, Your Honor. Thank you, Mr. Andrews. Mr. Brown? Yes, may it please the court. I'm going to try to go through a little bit and rebut some of what they said, and I would just at this point draw attention as JA 405 again is paragraph 37, and it's discussing the specific offense characteristics for count four, which is the base offense for the January 24th possession should be increased four levels because the defendant possessed a firearm in connection with another felony offense, period. On January 14, 1997, Manning possessed the same firearm in connection with the robbery and shooting. That's the whole case. That's the original forfeiture. Why wasn't that the basis of an appeal? Judge? Well, I know, you know, that's a rhetorical question. Yes, sir, and I can see that I have respect. No, you're doing an excellent job. Thank you, thank you, but I will say this. Pleasant Susie predate Ventura's adoption of the sentencing package doctrine in the fourth circuit. Ventura's explicitly adopted. Interestingly, the district judge actually refers to the sentencing package doctrine in her 2016 discussion, so she actually was pressing it. She knew it was coming, and she even indicated in there if the 924-C, which is count two failed, if that got struck down, that they'd be coming back and do it all over again, and I would suggest... What's a relief you want? That Marge count four would count one for sentencing purposes. We can't, we can't do that. Vacate sentence. It seems to me you would have to conclude that those two counts were duplicitous in order to do that. The punishment is multiple. I understand, but if you don't vacate the counts, they're still sitting there. You say merge them, but that's not a sentencing issue. It's a duplicitous issue. It would require dismissal of one of the counts. If I may, Lange is the quintessential double punishment case in the United States, and it's from 1873, so it says that anything firmly settled in England and America says you cannot be punished twice for the same crime. Well, I understand, but that's really a double jeopardy notion, and you're not supposed to be trying the second time, but... Because Lange was punished twice. He was actually only tried once, and he received a one-year jail or fine, and I think it was $5, and he paid the $5, and the judge said, oh, no, don't let him out. I'm changing the sentence. One-year jail and $5, and the U.S. Supreme Court said can't punish him twice, and for what it's worth, there's very little case law on that, but we know in Jarvis, this court recognized double jeopardy, although that was double jeopardy for being prosecuted twice, was subject to plain error recognition, even in forfeited, and not waived, and so I would suggest that there's a slight change in the mandate rule following Ventura. There's no way you can read Bell, Palazzi, and Susi, and then read Ventura's statement about it being de novo. There is a slight modification, and I don't think the judge recognized that, but again, I want to come back to this. Even the mandate opened it up only a little bit to redo the sentencing because you took out count two. The stacking is the last part. The amount of punishment is determined before stacking. We do the guidelines first. We do 35, 53 seconds. This is what Susi tells us. Then, and we know Chase talks about how you get to a total punishment. The judge figures out what she wants to give him, and then you do stacking. It at least had to go back to the figuring out what the total punishment would be because she wants to give him in 2021. We get there. She's looking, and she decides I want to give him 480 months minus 12 for COVID, 468 months. Then she looks at the stacking rule, and that's where this objection comes up. Okay. Yes, sir. Thank you. Mr. Brown, you're court appointed. I understand. I want to thank you and recognize that. As you know, it's really an important function, and you've done a wonderful job. Thank you. It's my pleasure.
judges: Paul V. Niemeyer, Stephanie D. Thacker, DeAndrea Gist Benjamin